**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MANUEL RAMON GUYZIK,

      Plaintiff,

  v.                                         Case No. 16-12430

JEFFREY A. MOORE, et al.,

      Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANT POWELL'S AND DEFENDANT TEETS'S MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Manuel Ramon Guyzik filed this action after he was mistakenly implicated in a drug distribution conspiracy and subsequently arrested by some of the individual Defendants. (Dkt. #30.) Following an amended complaint (Dkt. #30) and stipulated dismissals of certain Defendants and claims (*see* Dkt. ##36, 66, 70) the only remaining claims are against some of the individual Defendants who Plaintiff claims were involved in his wrongful arrest. Currently pending before the court are Defendant David Powell's and Defendant Chad Teets's motions for summary judgment (Dkt. ##58, 63).[1] The motion is fully briefed and the court has determined that a hearing is unnecessary. E.D. Mich. LR 7.1(f)(2). Because the legal issues in these motions largely overlap, the court will address both motions in this order. For the following reasons, Defendants' motions will be granted.

---

[1] Because this order encompasses motions by only Defendants Powell and Teets, where the court refers to "Defendants" in this order, the court is referencing these Defendants alone unless otherwise noted.

# I. BACKGROUND

The following facts are taken in the light most favorable to the Plaintiff. This case arises out of the Drug Enforcement Agency's ("DEA") misidentification of Plaintiff as a member of a drug trafficking conspiracy. There is no dispute now that Plaintiff was not a member of the conspiracy.

Defendants Teets, Powell, Justin Holton, Steve West, and Ryan Behrik (the "arresting Defendants") executed the arrest warrant for Plaintiff at his home. (Holton Dep. Dkt. #58-7 Pg. ID 850.) They arrived around 7:40 am. (West Dep. Dkt. #58-3 Pg. ID 720.) Plaintiff had already left for work, but his wife was home getting ready to take their two daughters to school. (Guyzik Dep. Dkt. #58-2 Pg. ID 642; Saldana Dep. Dkt. #58-5 Pg. ID 772.)

There is some dispute—albeit irrelevant to this analysis—about the manner in which the arresting Defendants approached the home. The arresting Defendants maintain that Defendant Powell knocked on the door and introduced himself to Plaintiff's wife—Deanna Saldana—when she answered; he then explained who he was and asked if the agents could speak with her inside. (Powell Dep. Dkt. #58-4 Pg. ID 748–49.) Plaintiff contends that that the arresting Defendants approached the front door with their guns drawn and Defendant Powell demanded "open the fucking door." (Saldana Dep. Dkt. #58-5 Pg. ID 771.) Plaintiff also maintains that after the arresting Defendants entered his house, they kept their guns pointed at his wife and daughters before eventually holstering their weapons. (*Id.* at Pg. ID 772.).[2]

---

[2] A motion is pending filed by Defendant Holton for spoliation sanctions against Plaintiff (Dkt. #74); Defendant Holton—joined by Defendants Behrik (Dkt. #75), Powell (Dkt. #76), and Teets (Dkt. #77)—contends that Plaintiff failed to preserve video

Around five minutes after the arresting Defendants approached Plaintiff's home, Plaintiff's neighbor called Plaintiff to tell him about the law enforcement presence there. (Guyzik Dep. Dkt. #58-2 Pg. ID 641–42.) Plaintiff immediately got in his truck and drove for home. (*Id.* at Pg. ID 642.) He tried to call his wife several times but received no answer. (*Id.*) His neighbor called again during the drive to let him know that he was taking Plaintiff's daughters to school; Plaintiff spoke to his daughters, who were crying hysterically. (*Id.*) Plaintiff also received a call from his wife's cell phone—one of the arresting Defendants was using her phone. (*Id.* at Pg. ID 643.) Though Plaintiff does not recall who he spoke to, the record indicates that it was Defendant Powell. (*Id.*; Powell Dep. Dkt. #58-4 Pg. ID 751.) Plaintiff informed Defendant Powell that he was on his way home. (Guyzik Dep. Dkt. #58-2 Pg. ID 643.) He got to the house approximately 10 to 20 minutes later. (Saldana Dep. Dkt. #58-5 Pg. ID 778.)

Plaintiff is a former Marine (Guyzik Dep. Dkt. #58-2 Pg. ID 637). He is 5'8" and weighed about 195 pounds on the day of his arrest. (*Id.* at Pg. ID 644.) Defendant Holton described Plaintiff as "very stout. He was very strong." (Holton Dep. Dkt. #58-7 Pg. ID 858.)

When Plaintiff pulled up to his house, he was upset. (Guyzik Dep. Dkt. #58-2 Pg. ID 643.) According to Plaintiff, he was upset because his daughters were upset. (*Id.*) Realizing that vehicles were already blocking his driveway and the street parking in front of his home, Plaintiff drove his truck onto his front lawn. (*Id.*) Plaintiff jumped out of his truck, shut the door, and walked quickly to the front of his house. (*Id.*)

---

evidence (captured by an ADT security camera) showing Defendants as they were entering the premises and three minutes thereafter.

When he walked in, Plaintiff noticed Defendants Holton, Teets, and Powell in the living room, with Defendant West in the kitchen with his wife. (*Id.* at Pg. ID 644–45.) He immediately told the arresting Defendants: "Get the fuck out of my house." (*Id.* at Pg. ID 646.) According to Plaintiff, one of the arresting Defendants responded "shut the fuck up." (*Id.*) The same arresting Defendant also told Plaintiff that he was under arrest. (Dkt. #30 Pg. ID 307.)[3] There is a dispute as to whether Plaintiff was told to put his hands behind his back or not. (*See* Guyzik Dep. Dkt. #58-2 Pg. ID 646; Powell Dep. Dkt. #58-4 Pg. ID 754.)

Plaintiff was "taken to the ground immediately after that." (Guyzik Dep. Dkt. #58-2 Pg. ID 646.) He could not tell who grabbed him where, but knows that Defendants Teets, Powell, and Holton are the ones who took him to the ground. (*Id.*) He landed with

---

[3] At deposition, Plaintiff testified that he was not told he was under arrest. (*See* Guyzik Dep. Dkt. #58-2 Pg. ID 671.) Both Plaintiff's original (Dkt. #1 Pg. ID 8) and amended complaint (Dkt. #30 Pg. ID 307), however, aver that Plaintiff was informed by one of the arresting Defendants that he was under arrest. Plaintiff also admitted at deposition that he was given an opportunity to review the allegations in the complaint and believes they were based on truthful information. (*Id.* at Pg. ID 670.) No explanation was given for the contradiction between Plaintiff's complaint and his deposition testimony. (*Id.* at Pg. ID 671.)

"Factual assertions in pleadings, unless amended, are considered judicial admissions conclusively binding on the party who made them" where the statement is "deliberate, clear and unambiguous and expressly concede[s] an alleged fact." *Kay v. Minacs Grp., Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014) (internal quotations, alterations, and citations omitted); *see also Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000) ("Plaintiffs are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit."). Plaintiff argues that this "drafting error" should not be considered a judicial admission because it is insufficiently deliberate, clear, and unambiguous. (Dkt. #69 Pg. ID 1338.) But Plaintiff fails to describe what other meaning the court could possibly take from this statement that would make it unclear or ambiguous. Plaintiff made no attempt, moreover, to amend this part of the complaint, despite having reviewed this assertion and despite his decision to file an amended complaint. The court, therefore, finds that Plaintiff is bound by this admission in his pleadings.

his chest to the ground and his hands just below his chin near his neck. (*Id.*) According to Ms. Saldana:

> They were, like, on his back, like, I don't know exactly who was where, but, like, somebody had, like, a knee on his neck or something and some of them were on top of his back, like, holding – like, had him on the ground. They were on top of him.

(Saldana Dep. Dkt. #58-5 Pg. ID 795.) Ms. Saldana, however, did not see Defendant Powell exert any particular force against Plaintiff. (*Id.* at Pg. ID 795.) According to Plaintiff, he was trying to pull his arms out from underneath him "so maybe they would stop" and because he "couldn't breathe." (Guyzik Dep. Dkt. #58-2 Pg. ID 674.) He could not get his arms out from underneath him, however, because of the weight on his body. (*Id.*) Plaintiff maintains that he was in no way resisting the arresting Defendants. (*Id.* at Pg. ID 648.) He did, however, hear voices telling him to stop resisting. (*Id.* at Pg. ID 647.)

According to Plaintiff, he was immediately "beat[en]." (*Id.*) Defendant Teets pulled his knee back and struck Plaintiff in the left shoulder more than twice. (*Id.* at Pg. ID 647–48.) Defendant Holton kneed him in the left ribs more than twice. (*Id.* at Pg. ID 648.) Defendant Behrik—who Plaintiff noticed for the first time while he was being beaten—struck Plaintiff with a closed fist four to five times on the right side of his head. (*Id.*) Plaintiff was also struck on the left side of his head, his right shoulder, the center of his back, and the back of his neck, but he does not know who caused those injuries nor how he was struck. (*Id.* at Pg. ID 647, 649.) He went in and out of consciousness during this period. (*Id.* at Pg. ID 649.)

Eventually Plaintiff's arms were pulled behind his back and Defendant Powell handcuffed him. (Powell Dep. Dkt. #58-4 Pg. ID 756.) While Plaintiff was still on the

floor, about five seconds after he was handcuffed, Defendant Behrik struck him with a closed fist three to four more times on the right side of his head. (Guyzik Dep. Dkt. #58-2 Pg. ID 650, 667.) These blows happened "quickly." (*Id.* at Pg. ID 669.) According to Ms. Saldana, Defendants Powell and Holton were holding Plaintiff still, and Defendant Teets was about a foot away. (Saldana Dep. Dkt. #58-5 Pg. ID 803.) Plaintiff then turned his head to the left, and Defendant Holton kneed him twice more in his left side and punched him on the left side of his face. (Guyzik Dep. Dkt. #58-2 Pg. ID 650.) Two of the arresting Defendants then pulled Plaintiff up by his biceps. (Guyzik Dep. Dkt. #58-2 Pg. ID 651.) He was then taken outside and placed in the back of a Lincoln Park squad car. (*Id.* at Pg. ID 651.)

Plaintiff was taken to the DEA office in Detroit and booked. (*Id.* at Pg. ID 656.) Defendant Jeffrey Moore interviewed Plaintiff and determined that Plaintiff had been wrongly identified. (Moore Dep. Dkt. #59-1 Pg. ID 884.) Plaintiff appeared in duty court and was released that afternoon. (*Id.*)

According to Plaintiff, he sustained the following injuries: bruising and swelling on the right side of his head and face; bruising and swelling on the left side of his head and face; discoloration near the top of his head; bruising and swelling on his right ear; a gash on his nose; bruising on his back; bruising on his right shoulder; and swelling to his left elbow. (Guyzik Dep. Dkt. #58-2 Pg. ID 678–79.) He rated the pain in his ribs and head following the attack as a ten out of ten, and he thought his ribs were broken and that he had a head injury. (*Id.* at Pg. ID 652.) He did not return to work for two weeks and he has continuing anxiety from the incident. (*Id.* at Pg. ID 654.)

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted).

## III. DISCUSSION

### A. Sufficiency of the Allegations Against Defendants

Defendants Powell and Teets first argue that they are entitled to summary judgment because Plaintiff has not included any specific allegations of excessive force against them. "[D]amage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Pleadings and discovery that attribute the unconstitutional acts to a group as a whole or only describe an offending defendant in general terms are insufficient. *Ondo v. City of Cleveland*, 795 F.3d 597, 611 (6th Cir. 2015). Nonspecific allegations will not withstand a motion for summary judgment. *Id.*

## 1. Defendant Powell

Defendant Powell argues that Plaintiff has "fail[ed] to plead with any specificity regarding the alleged force or its resultant injuries." (Dkt. #58 Pg. ID 615.) He notes that while Plaintiff made more specific allegations at his deposition, none of the allegations at deposition relate to Defendant Powell in particular. Indeed, according to Plaintiff, after he was taken to the ground, he did not see Defendant Powell again until he was escorted out of his home. (Guyzik Dep. Dkt. #58-2 Pg. ID 665–66.)

Plaintiff responds that Ms. Saldana's testimony is enough to create a genuine issue of material fact as it relates to Defendant Powell. He argues that "Plaintiff and [Ms. Saldana] identified Powell as one of the [D]efendants that tackled [Plaintiff] to the ground." (Dkt. #69 Pg. ID 1333.) He also argues that Plaintiff "testified that the weight on his back was so significant that he could neither move nor breathe," and thus a reasonable inference could be drawn that Defendant Powell, in addition to two other arresting Defendants, was exerting his weight on Plaintiff's back and neck. (*Id.* at Pg. ID 1333–34.)

The court agrees with Defendant Powell that there are insufficiently specific allegations against him concerning the force used against Plaintiff after Plaintiff was brought to the ground. Plaintiff testified that he could no longer see Defendant Powell once he was taken down (Guyzik Dep. Dkt. #58-2 Pg. ID 650), and he therefore did not identify any specific blows that Defendant Powell may have delivered. While Ms. Saldana testified that the arresting Defendants on top of Plaintiff were "kind of like a big ball, arms, legs, everything," (Saldana Dep. Dkt. #58-5 Pg. ID 779), she also testified

that she could not discern what, if anything, Defendant Powell particularly did (*id.* at Pg. ID 795).[4]

The court will also not infer, as Plaintiff proposes, that the amount of weight on Plaintiff suggests that Defendant Powell was exerting his body weight on Plaintiff's head and neck. Plaintiff invites the court to draw this inference based only on Plaintiff's testimony that he could not breathe or move with one or more of the arresting Defendants on top of him. Without more, this "inference" is not one the court will reasonably make on this motion for summary judgment because the alleged weight on Plaintiff's back amounts to no more than a scintilla of evidence that Defendant Powell was one of the arresting Defendants on top of Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

Defendant Powell, therefore, is entitled to summary judgment as to any alleged excessive force following Plaintiff being tackled. These allegations are insufficiently specific, under *Lanman* and *Ondo*, to survive a motion for summary judgment. If a claim for excessive force is to be sustained against Defendant Powell, therefore, it must necessarily be based on Defendant Powell's actions in helping take Plaintiff to the ground before he was handcuffed.

---

[4] "Q. . . . Beyond Holton and Behrik, could you see what Officer Powell was doing?
A. No. Like I said, it was just a bunch of arms and legs everywhere.
Q. Okay. And so could you see where –
A. I couldn't decipher the difference."
(Saldana Dep. Dkt. #58-5 Pg. ID 795.)

## 2. Defendant Teets

### i. Identification

Like Defendant Powell, Defendant Teets argues that Plaintiff's amended complaint is devoid of any specific allegations of excessive force against him. (Dkt. #63 Pg. ID 1235.) So, too, does Defendant Teets argue that Plaintiff's deposition testimony is insufficient to state a claim against him for excessive force. (*Id.*) Unlike Defendant Powell, however, Defendant Teets argues that Plaintiff's deposition testimony is insufficient, not because it does not specifically allege some use of force by Defendant Teets, but because "there is a fundamental flaw with [the] testimony identifying Officer Teets: it is blatantly contradicted by indisputable photo evidence and therefore cannot be used to avoid summary judgment." (*Id.*)

According to Defendant Teets, when asked to describe Defendant Teets, both Plaintiff and Ms. Saldana described him as bald and clean shaven. (Guyzik Dep. Dkt. #58-2 Pg. ID 669; Saldana Dep. Dkt. #58-5 Pg. ID 771–72.) Photo evidence, however, demonstrates that on the day of the arrest, Defendant Teets had a full beard and a head of hair. (Teets Decl. Dkt. #62 Pg. ID 1125–28.)

Defendant Teets relies on *Kowolonek v. Moore*, 463 F. App'x 531 (6th Cir. 2012) for his argument that Plaintiff's misidentification of him at deposition entitles him to summary judgment. In *Kowolonek*, the plaintiff alleged that defendant officers used excessive force by using a taser on him while he was handcuffed. *Id.* at 538. The only testimony regarding which defendant officer had used the taser was by plaintiff's girlfriend, who identified the man in question as "the last guy to arrive on the scene" and described him as wearing a brown uniform. *Id.* at 539. The plaintiff's girlfriend's

testimony on this point was inconsistent with the record evidence, however, as all of the named defendant officers had worn black uniforms. *Id.* Moreover, though she testified that there were two officers on the scene when the "last guy pulled up," there were five officers in total during the altercation. *Id.* Because of the inconsistencies in this testimony, the Sixth Circuit affirmed the district court's decision to grant summary judgment to the officers on the claim involving the taser.

Plaintiff argues that even if there is a discrepancy between the identification testimony and Defendant Teets's appearance on the day of the arrest, Plaintiff has presented other evidence sufficient to avoid summary judgment. (Dkt. #69 Pg. ID 1332.) The *Kowolonek* defendants were entitled to summary judgment, according to Plaintiff, because the plaintiff's girlfriend's testimony was the only existing evidence identifying a particular defendant as the one who used the taser.

The court agrees with Plaintiff. While the court acknowledges the apparent discrepancy between Plaintiff and Ms. Saldana's testimony identifying Defendant Teets, these physical descriptions—unlike those in *Kowolonek*—do not amount to the *only* evidence tying Defendant Teets to the injuries alleged by Plaintiff. Indeed, Plaintiff throughout his testimony identified Defendant Teets by name as the Defendant who kneed him in the shoulder while he was on the ground. (*See, e.g.*, Guyzik Dep. Dkt. #58-2 Pg. ID 647–48 ("Officer Teets kneed me in the left shoulder.").) Plaintiff's testimony on this point—that Defendant Teets was near enough to his left shoulder to knee him in it—is consistent with Defendant Teets's testimony about his position during the altercation. (*See* Teets Dep. Dkt. #58-6 Pg. ID 829 ("Once I was able to pull his arm out from underneath his body, I would use – I used my left knee to hold his – that would

be his left shoulder down so he can't turn belly up.").) The court will not grant summary judgment to Defendant Teets on the basis that he was insufficiently identified.

### ii. Injury

Defendant Teets, however, also argues that he is entitled to summary judgment for allegedly kneeing Plaintiff because Plaintiff "has not alleged that he suffered any injury to his left shoulder." (Dkt. #63 Pg. ID 1236–37.) Defendant Teets cites and quotes *Rodriguez v. Passinault*, 637 F.3d 675, 687 (6th Cir. 2011) as saying that "under the Fourth Amendment's reasonableness standard, excessive force claims generally require at least *de minimis* physical injury."

Defendant Teets misunderstands the case law. The court grants that *Rodriguez*'s quoted passage seems to suggest that an excessive use of force claim cannot be sustained without some injury. This excerpt, however, does not set out the established law of the Sixth Circuit, but rather describes the district court's apparent—but ultimately mistaken—belief in that case that established law required some injury to make out an excessive force claim. *Id.* The statement is followed by a citation to *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394, 406–07 (6th Cir.2009), a case that "*declined* to adopt a *de minimis* injury requirement for excessive force claims under the Fourth Amendment." *Neal v. Melton*, 453 F. App'x 572, 574 n.2 (6th Cir. 2011) (emphasis added). As the Sixth Circuit noted in *Morrison*, "the extent of the injury inflicted is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment," and even a claim for a slap across the face while a plaintiff is subdued in handcuffs can withstand summary judgment "notwithstanding the relatively minimal use of force applied and the absence of any resulting injury." 583 F.3d at 407.

Instead, the absence of injury may be taken into account when determining whether the use of force against a person is reasonable. *See Bolden v. City of Euclid*, 595 F. App'x 464, 471 (6th Cir. 2014). The court, therefore, will not grant summary judgment to Defendant Powell on the basis that Plaintiff has not sufficiently alleged a specific injury.

## B. Qualified Immunity

Defendants next contend that, even if Plaintiff's allegations of excessive force are sufficiently specific, Defendants are entitled to qualified immunity.[5] Qualified immunity shields government officials from civil liability when they take actions in their official capacity that "[do] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity attaches unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The court employs a two-prong inquiry in determining whether a government official is entitled to qualified immunity:  (1) whether "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted); and (2) whether the constitutional right was "'clearly established' at the time of defendant's alleged misconduct," *id.* The determination of whether the right is "clearly established" must be

---

[5] Defendant Teets does not actually use the term "qualified immunity" as it relates to him in the argument section of his brief. His motion and the introduction section of his brief, however, posit that Defendant Teets is entitled to qualified immunity on Plaintiff's claims for use of force and failure to intervene. (Dkt. #68 Pg. ID 1202, 1214.) The court, therefore, construes Defendant's argument that he did not use unreasonable force as an argument for qualified immunity. It similarly construes Defendant Teets's argument for summary judgment on the failure to intervene claim, discussed below, as an argument for qualified immunity.

made "in light of the specific context of the case, not as a broad general proposition."

*Saucier*, 533 U.S. at 201. It is within the sound discretion of the district court to

determine the order in which it will address these prongs. *Pearson*, 555 U.S. at 236.

Whether an officer is entitled to qualified immunity is a question of law.

*Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 525 (6th Cir. 2015). "An answer of

'yes' to both of the qualified immunity questions defeats qualified immunity, while an

answer of 'no' to either question results in a grant of qualified immunity." *Haley v.

Elsmere Police Dep't*, 452 F. App'x 623, 626 (6th Cir. 2011). Once raised, it is the

plaintiff's burden to show that a defendant is not entitled to qualified immunity. *Everson

v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

### 1. Excessive Force

The parties agree that Plaintiff's claim for excessive use of force is properly

analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham

v. Connor*, 490 U.S. 386, 388 (1989). "Reasonableness," under this test, "requires

careful attention to the facts and circumstances of each particular case." *Id.* at 389. "The

'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* There

is a "built-in measure of deference to the officer's on-the-spot judgment about the level

of force necessary in light of the circumstances of the particular case." *Burchett v.

Kiefer*, 310 F.3d 937 (2002).

The court takes into account various factors in determining the reasonableness

of force used, including "the severity of the crime at issue, whether the suspect poses

an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 389. The parties dispute how each of these factors applies to the present case.

### i. Severity of the Crime at Issue

Defendants argue that Plaintiff—while incorrectly identified—was the "subject of an arrest warrant for his suspected role in narcotics trafficking; a felony and certainly a severe crime." (Dkt. #58 Pg. ID 622; *see also* Dkt. #63 Pg. ID 1238.) According to Defendant Teets, "[r]easonable officers could therefore believe that substantial risks existed for personal injury because of the inherent danger of the crime at issue." (Dkt. #63 Pg. ID 1239.)

Plaintiff—citing Defendant Powell's and Defendant Teets's depositions—notes that Defendants "know only that [Plaintiff] was charged with *some* crime, so the contention that this factor weighs in their favor fails." (Dkt. #69 Pg. ID 1335 (emphasis original).) Defendants argue in reply that this argument is a "misstatement" of the realities of this case. (Dkt. #72 Pg. ID 1755; *see also* Dkt. #73 Pg. ID 1768.) Defendants Powell and Teets are both members of a DEA task force. (Dkt. #72 Pg. ID 1755; Dkt. #73 Pg. ID 1768.) Defendant Powell was aware—following briefing from Defendant Moore—that Plaintiff was involved in an investigation being conducted by Defendant Moore. (Powell Dep. Dkt. #58-4 Pg. ID 742–43).

The court agrees with Defendants that, on these facts, it was reasonable for Defendants—as members of a DEA task force—to understand that Plaintiff was charged with a serious and dangerous crime, even if they did not know the exact nature of the crime for which there was an arrest warrant.

**ii. Immediate Threat to the Safety of the Officers or Others**

Plaintiff posed an immediate threat, according to Defendants, based on their perception of his arrival. Because of his phone calls with his neighbor and Defendant Powell, Plaintiff was aware that there were members of law enforcement waiting for him. (Guyzik Dep. Dkt. #58-2 Pg. ID 641–43.) When he got home, he pulled his truck onto the lawn, walked quickly up to his house, and, upon entering, immediately and aggressively told the arresting Defendants to "[g]et the fuck out of [his] house." Guyzik Dep. Dkt. #58-2 Pg. ID 643, 646.) Defendants also note that Plaintiff is a stocky former Marine (Guyzik Dep. Dkt. #58-2 Pg. ID 637, 644) and contend that he was therefore "physically imposing" (Dkt. #58 Pg. ID 622).

Plaintiff argues that he did not present a threat sufficient to warrant him being thrown violently to the ground. (Dkt. #69 Pg. ID 1335.) Rather, according to Plaintiff, the record established that the arresting Defendants had already "cleared the home to ensure the environment was safe," and they outnumbered Plaintiff five to one. (*Id.* at 1335–36.) Plaintiff also contends that he only parked in the lawn because the arresting Defendants had taken all other available parking, the fact of which they should have been aware. (*Id.* at 1335.) The evidence shows, moreover, that Plaintiff was "the same height and weight as the *smallest* two of the five defendants." (*Id.* at 1336 (emphasis original).) Finally, according to Plaintiff, his statement (what Plaintiff styles as a "demand" that the arresting Defendants leave) does not demonstrate that Plaintiff was a threat because the statement itself was not threatening. (*Id.*) Plaintiff did not, for example, say "I'm going to throw you out of here." (*Id.*)

The court disagrees with Plaintiff. The facts, as reasonably available to the arresting Defendants, are sufficient to demonstrate that Plaintiff was a threat. Whether the house was cleared prior to Plaintiff's arrival does not bear on whether Plaintiff himself posed a risk to the safety officers present. Neither does his size, nor the fact that he was outnumbered, mean that he did not pose a threat to the arresting Defendants individually—though Plaintiff may have been smaller than some of the arresting Defendants, Plaintiff does not dispute that he is stocky and strong. It was reasonable, then, for the arresting Defendants to conclude that, even if they outnumbered Plaintiff, he could cause harm to any one of the arresting Defendants before they were able to subdue him.

This is especially true in light of the manner of Plaintiff's approach to his home and his immediate demand that the arresting Defendants "[g]et the fuck out of [his] house." Despite Plaintiff's subjective explanation for why he drove his truck onto the lawn, a reasonable law enforcement officer could have concluded, based on Plaintiff's approach to his house and instant demand that they leave, that Plaintiff posed a physical threat to their safety. While 20/20 hindsight might demonstrate that Plaintiff was not as threatening as he may have appeared, Plaintiff—as it relates to this factor—has not overcome the level of deference due to Defendants in assessing his actions in the moment.

### iii. Resisting Arrest or Evading Arrest by Flight

It is undisputed that Plaintiff did not attempt to evade arrest by flight, but rather was on his way home when he spoke to Defendant Powell on the phone. (Guyzik Dep. Dkt. #58-2 Pg. ID 643.) This factor would therefore weigh against any claim that force

was warranted against Plaintiff before he was taken to the ground. Defendants claim that Plaintiff resisted arrest prior to being taken to the ground because he refused to be handcuffed. (Dkt. #58 Pg. ID 613; Dkt. #63 Pg. ID 1224.) But Plaintiff's version of events—wherein he was taken to the ground and immediately beaten before he had a chance to resist—is assumed true for the purposes of this motion. (Guyzick Dep. Dkt. #58-2 Pg. ID 647.)

The analysis changes, however, as it relates to Plaintiff's conduct after he was taken to the ground. Defendants contend that Plaintiff was resisting arrest. (*See* Dkt. #63 Pg. ID 1226.) Plaintiff maintains that he was in no way resisting. (Guyzik Dep. Dkt. #58-2 Pg. ID 648.) There is no dispute that Plaintiff's hands were under his chest when he was taken to the ground. (Guyzik Dep. Dkt. #58-2 Pg. ID 646–47.) Plaintiff testified that he tried to pull his arms out from under him, but was unable to because of the body weight on top of him. (*Id.* at Pg. ID 674.)

Defendants argue that Plaintiff's hands being under his body, coupled with the fact that Plaintiff had not been searched, means that their actions were objectively reasonable in placing Plaintiff on the ground while trying to gain control of his arms. (Dkt. #58 Pg. ID 623; Dkt. #63 Pg. ID 1240.) Defendant Powell notes that the Sixth Circuit has repeatedly held that it is reasonable for law enforcement to get a suspect into the prone position when attempting to "neutralize a perceived threat." (Dkt. #58 Pg. ID 618 (quoting *Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008)).) In addition to *Dunn*, Defendant Powell cites *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 637 (6th Cir. 2013), in which the Sixth Circuit determined that, where the defendant officers ordered the plaintiff to the ground so they could execute a search warrant, the plaintiff's

"apparent failure to drop to the ground quickly enough provided [the defendant officer] adequate justification to knee [the plaintiff] to the ground." The Sixth Circuit noted that the plaintiff's slow response may have been the result of his cerebral palsy, but that it could not "charge [the defendant] with knowledge that he did not possess"; therefore, plaintiff's "failure to respond immediately could have been interpreted as his resisting arrest." *Id.*

Both Defendants also cite *Goodrich v. Everett*, 193 F. App'x 551 (6th Cir. 2006). (Dkt. #58 Pg. ID 621; Dkt. #63 Pg. ID 1241.) In *Goodrich*, the plaintiff was suspected of throwing his wife from his vehicle during a domestic dispute. 193 F. App'x at 552. When officers came to the plaintiff's home to question him, the plaintiff refused to comply with their request that he step out of his vehicle; he instead drove to a nearby police station where he thought he would be safer than with the officers who confronted him; while the plaintiff drove around multiple police road blocks on the way, he also obeyed the speed limit, stopped at stop signs, and used his turn signal. *Id.* at 553. The plaintiff contended that, once he got out of his car at the police station, the defendants "body slammed [him] to the ground on the aggregate concrete" and pushed his face deep into some mulch. *Id.* The plaintiff testified that one of the defendants kneed him in the side until the plaintiff's ribs were broken and that both defendants kicked him as he was held down. *Id.* Because the plaintiff alleged that he was not resisting the defendants in any way, the defendants admitted for the purpose of summary judgment that he was not resisting arrest. *Id.* at 554. They also admitted that they had holstered their weapons and that they did not fear for their safety. *Id.* The plaintiff sustained a broken and dislocated hip, a broken rib, and torn skin on his knees as a result of the officers' actions. *Id.*

The Sixth Circuit affirmed that the defendants in *Goodrich* were entitled to qualified immunity. The court reemphasized that the reasonableness of an officer's use of force is evaluated from the perspective of an objective officer. *Id.* at 555. Because the plaintiff drove away from officers and because the officers only had information that the plaintiff was accused of throwing his wife from a vehicle, reasonable officers in the defendants position "would have suspected [the plaintiff] of a violent crime and would have interpreted [the plaintiff's] actions as an attempt to evade the police." *Id.* at 556. Therefore, "a reasonable officer would not have considered the physical tackling of [the plaintiff] to be an excessive use of force." *Id.*

The plaintiff argued that even if the defendants were entitled to tackle him to the ground, the force they used in kneeing and kicking him was unreasonable. *Id.* The Sixth Circuit disagreed, however, finding that as alleged by the plaintiff, "the kneeing and kicking occurred not when [the plaintiff] was neutralized, but while the officers were handcuffing him. *Even assuming that* [*the plaintiff*] *had been incapacitated merely by the officers' tackling him*, [the plaintiff] presents no evidence that such a fact was clearly communicated to the officers in the midst of the take-down." *Id.* (emphasis added). The plaintiff had testified that he was not resisting arrest. Nevertheless, the court found that his "subjective intent to cooperate" was insufficient to overcome the measure of deference given to the officers in their judgment regarding how much force was necessary because there was no evidence that this subjective intent was communicated to the officers and the totality of the circumstances suggested that he had no such intent. [6] *Id.*

---

[6] In *Goodrich*, the court was careful to point out that "some force may be wildly

Though Plaintiff contends that he did not resist, he points to nothing in the record that would have "clearly communicated" this intent to the arresting Defendants. Plaintiff's arms were under his chest. He attributes his hands being under his chest to the fact that he fell down with his hands up by his neck and the fact that he was unable to pull his arms out because of the weight on top of him. But the court, as in *Wells*, 538 F. App'x at 637, cannot charge Defendants with knowledge they did not possess. From the perspective of an objective officer, Plaintiff may have been hiding his hands in an effort to avoid being handcuffed. Defendants, therefore, could reasonably have thought that Plaintiff was resisting arrest, and, consistent with *Goodrich*, they were permitted to use force—including kneeing Plaintiff—prior to him being handcuffed.

Plaintiff contends that, despite this case law, the Sixth Circuit affirmed the denial of qualified immunity where a reasonable jury could find that the plaintiffs posed no threat to the officers—even in cases where the plaintiffs did resist arrest. (Dkt. #69 Pg. ID 1338–39 (citing *Lawler v. City of Taylor*, 268 F. App'x 384 (6th Cir. 2008) and *Malory v. Whiting*, 489 F. App'x 78 (6th Cir. 2012)).) As noted above, however, the court finds that—from the perspective of an objective officer in the Defendants' position—Plaintiff reasonably could have been deemed to pose a threat to the safety of the arresting Defendants. This argument, therefore, is unavailing.

---

disproportionate for the purpose of handcuffing a suspect, and may constitute excessive force regardless of whether a suspect has already been subdued." *Id.* at 557. Because Plaintiff has not demonstrated that Defendant Teets's action in kneeing Plaintiff in the shoulder before Plaintiff was handcuffed was "wildly disproportionate" to the circumstances, however, the court need not address this as it relates to Defendant Teets.

Finally, Plaintiff argues, Defendants Teets and Powell used excessive force because they continued to exert pressure on him—and Defendant Teets kneed Plaintiff in the shoulder—when he was already taken to the ground and subdued. (Dkt. #69 Pg. ID 1339–40.) "[T]he use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006). Plaintiff cites and quotes *Bolick v. City of East Grand Rapids*, 580 F. App'x 314, 320, where he says qualified immunity was denied to officers where "[plaintiff] could hardly move, had stopped resisting, and was outnumbered, all with one of the officers (. . . who was six inches taller and 80 pounds heavier) applying significant pressure to his upper back." *Id.* Plaintiff ignores, however, that the court considered these factors in light of the fact that the plaintiff in *Bolick* was "in handcuffs"—it was after he was handcuffed that one officer tased him and the other put his weight onto the plaintiff's back.

Here, there is no dispute that the force Plaintiff complains of as excessive (applied by Defendants Powell and Teets) occurred *before* Plaintiff was handcuffed. As noted above, an objective officer could have determined that Plaintiff was resisting arrest because his hands were kept under his body. The court finds, therefore, that there is insufficient evidence to suggest that an officer in the arresting Defendants' position must have known that Plaintiff was incapacitated or already neutralized.

### iv. Defendant Powell

As noted above, Defendant Powell is entitled to summary judgment on claims that he used excessive force after Plaintiff was taken to the ground because such allegations were insufficiently specific in the developed factual record. The preceding

analysis demonstrates that Defendant Powell is entitled to qualified immunity as to Plaintiff's claim for tackling him to the ground because Defendant Powell's actions were objectively reasonable. The first two factors in the *Graham* analysis—the severity of the charged crime and the threat to the safety of the officers—both weigh in favor of validating Defendant Powell's actions in subduing Plaintiff. Though the court assumes for the purposes of this motion that Plaintiff had not evaded or resisted arrest to that point, the court finds that there is sufficient evidence that Defendant Powell acted reasonably in subduing Plaintiff before Plaintiff could cause harm to the arresting Defendants. Defendant Powell is entitled to qualified immunity on Plaintiff's claim that he used excessive force in tackling Plaintiff to the ground.

### v. Defendant Teets

Though Plaintiff brought sufficiently specific allegations of excessive force against Defendant Teets, the court finds that Defendant Teets is nevertheless entitled to qualified immunity. As with Defendant Powell, Defendant Teets is entitled to qualified immunity in taking Plaintiff to the ground to subdue him.

In light of the Sixth Circuit's ruling in *Goodrich*, moreover, Defendant Teets is likewise entitled to qualified immunity for Plaintiff's claim that Defendant Teets kneed him in the shoulder. Plaintiff specifically testified that he was kneed in the shoulder prior to being handcuffed. (Guyzik Dep. Dkt. #58-2 Pg. ID 647 ("Q. All right. So all of these strikes to . . . your left shoulder . . . all of those strikes took place prior to being handcuffed? A. Yes.").) Because a reasonable law enforcement officer could have interpreted Plaintiff's actions after being tackled as resisting arrest, and because of the severity of Plaintiff's charged crime and his apparent threat to the officers, the court

finds that Defendant Teets's use of force, before Plaintiff was handcuffed, was reasonable. Defendant Teets, therefore, is entitled to qualified immunity on Plaintiff's claims for excessive use of force.

## 2. Clearly Established

Even if Defendants' use of force were unreasonable, however, the court finds that the right was not so clearly established as to defeat qualified immunity in this case.

The clearly established prong of qualified immunity is meant "to ensure that officials are on notice that their alleged conduct was unconstitutional." *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus a "clearly established" right is one in which the "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). General prohibitions, such as "an unreasonable search and seizure violates the Fourth Amendment," are insufficient. *Baynes*, 799 F.3d at 612. But precedent need not set out the precise factual scenario before the officer for the right to be clearly established. *Hope*, 536 U.S. at 741. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* The question for the court is whether the "state of the law" at the time of the activity gave the officer "fair warning" that his conduct was unconstitutional. *Id.*; *Baynes*, 799 F.3d at 612–13 ("[T]he *sine qua non* of the 'clearly established' inquiry is 'fair warning.'"). A court may look to circuit precedent in determining whether a right is clearly established. *See, e.g.*, *Baynes*, 799 F.3d at 614 ("The extent of case law in this Circuit suffices to put a reasonable officer on notice that excessively forceful or unduly tight handcuffing is a constitutional violation . . . .").

The Sixth Circuit's ruling in *Goodrich v. Everett*, 193 F. App'x 551 (6th Cir. 2006) sufficiently illustrates that, at the time he was arrested, Plaintiff did not have a clearly established right not to be tackled or, after he was on the ground, kneed in an effort to restrain his movement and subdue him enough to be handcuffed. As with the defendants in *Goodrich*, Defendants here would have been justified in their belief that Plaintiff had committed a serious crime and that he posed a danger to the safety of the officers. *Goodrich* approved officers tackling the plaintiff to the ground in light of these factors. It also validated officers using knees and kicks on the plaintiff—causing much more severe injuries than Plaintiff alleges here—before the plaintiff was handcuffed.

Plaintiff's citation to *Crawford v. Geiger*, 656 F. App'x 190 (6th Cir. 2016) does not change this analysis. The defendant officer in *Crawford* was denied qualified immunity where he threw the plaintiff to the ground during an arrest. *Id.* at 207–08. Unlike the present case, however, the Sixth Circuit in *Crawford* determined that all of the three *Graham* factors weighed in favor of the plaintiff. *Id.* Perhaps more significantly, however, *Crawford* was decided in 2016—two years after this Plaintiff was arrested.

Qualified immunity was raised by the Defendants here, and it was Plaintiff's burden to demonstrate that they were not entitled to it. Plaintiff does not address how it was clearly established, prior to the actions undertaken in this case, that under these circumstances he had the right not to be taken to the ground or kneed in the shoulder before he was handcuffed. Indeed, the only time that Plaintiff mentions the "clearly established" prong of the qualified immunity analysis in his argument is to note that "there is no question that a citizen's right to be free from physical force when he is not

resisting has been clearly established." (Dkt. #69 Pg. ID 1349.) Such a "general prohibition" is insufficient to establish that Plaintiff's rights were clearly established here.

### C. Failure to Intervene

Finally, Defendants contend that they are entitled to qualified immunity on Plaintiff's claims for failure to intervene.[7] The parties agree that, to be liable for failure to intervene in another officer's excessive use of force, the plaintiff must demonstrate that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

### *1. Before Plaintiff Was Handcuffed*

Defendant Teets argues that he cannot be liable for failure to intervene before Plaintiff was handcuffed because his testimony illustrates that he was "solely and completely focused on Guyzik's left hand and arm" and he therefore did not have reason to know of the other officer's actions in striking Plaintiff. (Dkt. #63 Pg. ID 1243–44.) He further argues that he did not have the opportunity or means to intervene because he could not do so "without sacrificing his duty to assist with the arrest." (*Id.* at 1244.)

---

[7] According to Defendant Powell, he makes this argument because he "anticipates that Plaintiff will argue" he is liable for failure to intervene despite the fact that it is "not pled anywhere in Plaintiff's Amended Complaint." (Dkt. #58 Pg. ID 624.) The claim was, in fact, raised in the amended complaint. Plaintiffs' amended complaint states: "Upon information and belief, *each* of the Defendant Arresting Agents/Officers were aware of the unlawful force conduct of their fellow Defendant Arresting Agents/Officers with respect to Mr. Guyzik, had a reasonable opportunity to intervene to prevent it, but failed to do so." (Dkt. #30 Pg. ID 312 (emphasis added).) Whether the claim is sufficiently specific for this summary judgment motion, however, is addressed below.

The court disagrees with Defendant Teets that it may properly determine, as a matter of law, based solely on Defendant Teets's deposition testimony, that he was so completely and utterly focused on the Plaintiff's left arm that he was unaware of the force being used by his fellow arresting Defendants mere inches from him.

The court reaches a different conclusion, however, with respect to whether there is sufficient evidence on the record that Defendant Teets had the means or opportunity to intervene. Plaintiff argues that, because Plaintiff was already subdued, the court should reject Defendant Teets's argument that he did not have the means to intervene. (Dkt. #69 Pg. ID 1342.) Again, the court relies on its conclusion that Plaintiff was not sufficiently neutralized until he was handcuffed. There is no dispute that Defendant Teets was attempting to secure Plaintiff's left arm before the handcuffs were secured on Plaintiff (regardless of Plaintiff's contention that he was neutralized even if he was not handcuffed). The court therefore finds that Plaintiff has not sufficiently shown that Defendant had the opportunity and means to intervene. Defendant Teets is entitled to qualified immunity on Plaintiff's claim that he failed to intervene in the allegedly excessive use of force by other arresting Defendants before Plaintiff was handcuffed.

Curiously, neither Defendant Powell nor Plaintiff address whether Defendant Powell—who, by his own account, was "pushed . . . out of the way" by Guyzik before Plaintiff was taken to the ground (Dkt. #63 Pg. ID 1225)—had the opportunity to intervene in the alleged excessive use of force before Plaintiff was handcuffed. The court, however, finds nothing that would establish that Plaintiff developed on the factual record a sufficiently specific claim against Defendant Powell for failure to intervene before Plaintiff was handcuffed. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.

2008). Defendant Powell, therefore, is entitled to summary judgment on a claim that he failed to intervene before Plaintiff was handcuffed.

### 2. After Plaintiff Was Handcuffed

Defendants are similarly entitled to qualified immunity on the claim that they failed to intervene on Defendant Behrik's and Defendant Holton's alleged excessive use of force after Plaintiff was handcuffed. According to Plaintiff, Defendant Behrik's blows happened "[m]aybe five seconds" after he was handcuffed. (Guyzik Dep. Dkt. #58-2 Pg. ID 667.) Defendant Holton's blows happened immediately after. (*Id.*) Though Plaintiff makes conclusory arguments that "a fact finder may infer that Defendants Teets and Powell saw the beating, had opportunity to react, and [did not] intervene," (Dkt. #69 Pg. ID 1343), he fails to support these allegations with citations to the record. As noted above, Defendant Teets had just finished securing Plaintiff before Plaintiff was handcuffed. It is undisputed that Defendant Powell is the one who placed the handcuffs on Plaintiff. (Powell Dep. Dkt. #58-4 Pg. ID 756.) Plaintiff fails to demonstrate how Defendants Powell and Teets, within five seconds of securing Plaintiff, would have had the means and opportunity to prevent Defendant Behrik and Defendant Holton from striking Plaintiff again. As presented to the court, therefore, Defendants Powell and Teets are entitled to qualified immunity on a claim for failing to intervene after Plaintiff was handcuffed.

### IV. CONCLUSION

Defendant Powell is entitled to summary judgment for any alleged excessive use of force after Plaintiff was taken to the ground, as well as for a failure to intervene claim before Plaintiff was handcuffed, because no such claims are sufficiently made out in the

pleading or the factual record. Defendants Powell and Teets are both entitled to qualified immunity as to Plaintiff's remaining claims against them for excessive force and failure to intervene. Accordingly,

IT IS ORDERED that Defendants' motions for summary judgment (Dkt. ##58, 63) are GRANTED.

s/Robert H. Cleland                               /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 17, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 17, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner                               /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\KNP\Civil\16-12430.GUYZIK.summary.judgment.KNP2.docx