**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MANUEL RAMON GUYZIK,

    Plaintiff,

  v.                                                             Case No. 16-12430

JEFFREY A. MOORE, et al.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT HOLTON'S MOTION FOR SPOLIATION SANCTIONS**

Plaintiff Manuel Ramon Guyzik was mistakenly implicated in a drug distribution conspiracy and subsequently arrested by some of the individual Defendants. (Dkt. #30.) The only remaining claims in this action are against Defendants Justin Holton and Ryan Behrik, who were both involved in Plaintiff's arrest. Presently before the court is Defendant Holton's motion for spoliation sanctions. (Dkt. #74.) Defendant Holton contends that Plaintiff failed to preserve security camera footage of some Defendants entering Plaintiff's home 20 to 30 minutes before Plaintiff was arrested. He asks that Plaintiff's claims against him be dismissed. In the alternative, Defendant Holton asks the court to impose an irrebuttable presumption that the video would not have supported Plaintiff's account of how these Defendants' acted when they entered the house. The motion is fully briefed, and the court held a hearing on November 15, 2017. For the following reasons, the court will impose spoliation sanctions, though not those requested by Defendant Holton.

# I. BACKGROUND

Rather than repeat the detailed factual background of this case, the court incorporates and refers to the relevant section of its opinion and order granting summary judgment to Defendants Chad Teets and David Powell. (Dkt. #81.) The court will, though, elaborate on the factual dispute that was irrelevant in that opinion: the manner in which the arresting Defendants approached Plaintiff's home.

Defendants Teets, Powell, Holton, Behrik, and Steve West (the "arresting Defendants") went to Plaintiff's home to execute an arrest warrant. They arrived at the house around 7:40am, but Plaintiff had already left for work.

The arresting Defendants maintain that Defendant Powell knocked on the door and introduced himself to Plaintiff's wife—Deanna Saldana—when she answered. Defendant Powell explained who he was and asked if the agents could speak with Saldana inside. She invited them in. The arresting Defendants explained that they had an arrest warrant for Plaintiff. Saldana was "taken aback," but offered to call Plaintiff at work. Defendant Holton's motion describes it as a "routine, even pleasant, encounter" until Plaintiff returned home. (Dkt. #74 Pg. ID 1782.)

Plaintiff and Saldana, however, express a very different version of events. Saldana contends that that the arresting Defendants approached the front door with their guns drawn and Defendant Powell demanded that she "open the fucking door." After the arresting Defendants entered the house, they kept their guns pointed at her and her young daughters before eventually holstering their weapons. Plaintiff's daughters were crying hysterically. Defendant Powell repeatedly asked "Where's the money? Where's the dope?"

What is not in dispute is that Plaintiff's living room was equipped with an ADT home security camera. The camera was set to automatically record for three minutes whenever the front door opened. The camera therefore recorded the arresting Defendants' entry into Plaintiff's home after Saldana opened the door. Sometime after the arresting Defendants entered, the camera was unplugged. Plaintiff maintains that it was unplugged by one of the arresting Defendants. Defendant Holton has not responded to this allegation.

There is also no dispute that Plaintiff was aware that his security camera would record video and that it was possible to look at stored footage. (*See* Guyzick Dep. Dkt. #74-7 Pg. ID 1839.) Plaintiff asked Saldana to retrieve "footage from the incident" within a few days after the arrest, but Saldana told him that ADT did not have the footage. (*Id.*)

On Saldana's phone was an ADT application that allowed a user to arm and disarm the system, watch live footage, and view and save stored footage. The day after the arrest, Saldana had accessed the application. (Dkt. #74-9 Pg. ID 1843.) The record does not disclose what she did while logged in. Saldana says she never checked the application to see whether there was footage from the arresting Defendants' arrival. (Saldana Dep. Dkt. #74-6 Pg. ID 1825.) Nine days after the arrest, Saldana contacted ADT to ask when the camera had gone offline. (Dkt. #74-8 Pg. ID 1841.)

Neither Saldana nor Plaintiff saved the recorded footage. ADT maintains recorded video on its servers for only 30 days. The footage, in other words, is gone.

## II. STANDARD

The district court has broad discretion in imposing sanctions for evidence spoliation. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). The district court may

3

dismiss a case, grant summary judgment, or craft a jury instruction permitting the jury to infer a fact based on the lost evidence—the proper remedy depends on the circumstances. *Id.* at 653. Regardless of how the district court chooses to craft the sanction, the sanction should serve a fairness and a punitive function. *Id.* at 652.

### III. DISCUSSION

When it comes to adverse inference jury instructions based on lost or destroyed evidence, the party seeking the adverse inference must show:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Though the Sixth Circuit has explicitly applied these elements only in the context of adverse jury instructions, *see, e.g.*, *Adkins v. Wolever*, 692 F.3d 499, 503–04 (6th Cir. 2012), they appear equally applicable to a request for dismissal as a spoliation sanction. The court will therefore also consider them when analyzing Defendant Holton's request to dismiss the claims against him.

### A. Obligation to Preserve

A party has a duty to preserve evidence for civil litigation "when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (internal quotation omitted).

There is no real dispute that Plaintiff had an obligation to preserve the video at issue here. Plaintiff admits that he contacted an attorney about filing a civil suit within

4

days of his arrest. He was thus on notice that a video like this could be relevant to future litigation.

Plaintiff, nevertheless, argues that he did not have an obligation to preserve the video because the events depicted in it—namely, the manner in which the arresting Defendants entered Plaintiff's home—occurred 30 minutes before Plaintiff's return to the house and his eventual arrest. (Dkt. #78 Pg. ID 1862–63.) Plaintiff misunderstands what it means to be "relevant." Relevant in this context means "some showing indicating that the destroyed evidence would have been relevant to the contested issue" such that "a reasonable trier of fact could find that it would support that claim." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554–55 (6th Cir. 2010). It does not mean dispositive. It does not even mean critical or significant. It means no more than evidence that a jury could—but not necessarily *would*—find is supportive of one party's version of a contested issue.

The contested issue here is whether the arresting Defendants—including Defendant Holton—used excessive force in effectuating Plaintiff's arrest. If the arresting Defendants forced their way into Plaintiff's home with weapons drawn and pointed at Plaintiff's family, it is unquestionably relevant to whether or not the arresting Defendants were professional in their later treatment of Plaintiff. Plaintiff virtually endorsed the relevance of these allegations by splashing them across approximately nine numbered paragraphs in his complaint and amended complaint. (Dkt. #1 Pg. ID 6–7; Dkt. #30 Pg. ID 305–06.) These lurid details set the stage for the accusation of gross misconduct alleged to have emerged minutes later when Plaintiff arrived in the front yard and entered the house.

Despite the fact that the video was relevant, Plaintiff's counsel repeatedly asserts—in both briefing and at the hearing—that neither Plaintiff nor Saldana had the legal knowledge necessary to understand that video taken 30 minutes prior to the arrest would have been relevant. (*See, e.g.*, Dkt. #78 Pg. ID 1863.) But the obligation to preserve evidence is based on an objective standard, not a subjective one. *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) ("Whether [plaintiff] *in fact* knew that the oven had legal relevance is beside the point."). Because Plaintiff should have known that the video of the arresting Defendants entering his home would be relevant, he had an obligation to preserve it.

### B. Culpable State of Mind

The culpable state of mind required for a spoliation sanction can range "through the degrees of negligence to intentionality." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). Depending on the circumstances of the case, then, the proper sanction may correspond to the level of fault established. *Id.* at 652–53.

Defendant Holton would have the court find that Plaintiff's conduct was intentional. Defendant Holton says that Plaintiff's claim that he asked Saldana to get the footage but that she replied it was unavailable "is not credible." (Dkt. #74 Pg. ID 1791.) He says that Plaintiff's claim "that he never viewed footage of the agents he intended to sue entering his home is hard to believe." (*Id.* at Pg. ID 1792.) He says that Plaintiff watched a video, taken by Plaintiff's neighbor, of the arresting Defendants approaching Plaintiff's home, making it "even more unlikely that he did not watch the video footage from inside his house." (*Id.*) Defendant Holton's argument on these points, therefore, relies largely on inference.

6

At the hearing, the court asked Defendant Holton where it would find, in the record, evidence that the Plaintiff or Saldana were aware of ADT's 30 day retention policy. Defendant Holton conceded that there was nothing in the depositions to suggest Plaintiff was aware of the policy, but submitted that the court should assume Saldana knew of the timeline because of how frequently she uses the application where the footage is available.

Defendant Holton also presents alleged discrepancies between Plaintiff's and Saldana's testimony that "make it unlikely that [Plaintiff] inadvertently failed to preserve the video." (Dkt. #74 Pg. ID 1791.) Defendant Holton avers that "Saldana claimed at her deposition that at the time of the arrest she had not used the cellphone application in a couple weeks. However, ADT records show she accessed the cellphone application numerous times in the days before the arrest." (*Id.*) This summary of Saldana's testimony is imprecise and belied by the record. Saldana did not testify that she had not used the cell phone application in weeks—she testified that she had not *viewed footage* on the application in weeks. (Saldana Dep. Dkt. #74-6 Pg. ID 1823.) Saldana also testified that she never watched the video at issue here (*id.* at Pg. ID 1825), has only ever watched live (not recorded) video (*id.*), and that she accesses the application to arm and disarm her security system (*id.* at Pg. ID 1827).

It is Defendant Holton's burden, as the party seeking a spoliation sanction, to show that Plaintiff's conduct rises to an *intent* to destroy evidence. *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013). Providing the court with likelihoods and probabilities does not suffice here to meet that burden. There is, in short, insufficient evidence for the court to determine anything except that Plaintiff

7

negligently failed to preserve the video before it was destroyed by ADT. Plaintiff and Saldana knew that the camera would record video when the door opened, knew how to access the footage, and knew how to contact ADT about the camera. Knowing all of this, Plaintiff still failed to preserve the video of the arresting Defendants' entry into the home.

Plaintiff suggests that there was no culpable conduct at all because he satisfied any obligation to preserve evidence by searching for video of the *arrest*. Once he and Saldana confirmed that there was no video of the arrest, according to Plaintiff, the obligation to obtain the "best evidence" in this case was satisfied. (*Id.* (citing *Parrish v. Dollar Gen. Corp.*, 680 F. App'x 423, 427 (6th Cir. 2017)).) But Plaintiff's obligation was not to preserve the "best" evidence—it was to preserve "relevant" evidence. Plaintiff's citation to *Parrish v. Dollar General Corp.*, 680 F. App'x 423, 427 (6th Cir. 2017) is inapposite. The video at issue in *Parrish* did not show the area where the plaintiff had allegedly slipped and fallen, so it was irrelevant to the plaintiff's claim. There was, therefore, nothing to suggest that the irrelevant video evidence was destroyed with a culpable state of mind. *Parrish*, 680 F. App'x at 427. Here, however, the video evidence was relevant and Plaintiff negligently failed to preserve it.

Plaintiff also argues that he did not have a culpable state of mind because Saldana was not the only one to testify that the arresting Defendants had their guns drawn. (Dkt. #78 Pg. ID 1864.) Defendant Teets also testified that the entire team had their guns drawn (though he denies that the children in the house were crying and the court cannot tell from the testimony whether Defendant Teets recalls pointing the guns at anyone in the home). (Teets Dep. Dkt. #78-4 Pg. ID 1872.) Thus, according to

8

Plaintiff, he did not have a culpable state of mind because the video footage would have supported both Saldana's and Teets's recollection of the arresting Defendants' entry.

The court is unsure how this evidence is supposed to demonstrate that Plaintiff was not negligent in failing to preserve the video. Even if the video supported Saldana's and Defendant Teets's testimony, that fact alone would not obviate Plaintiff's obligation to preserve relevant evidence. *See Ross v. Home Depot USA, Inc.*, No. 12-cv-743, 2014 WL 2805094, at *5 (S.D. Ohio June 20, 2014) (finding spoliation instruction warranted where the defendant did not act in bad faith and security camera footage was likely cumulative of existing evidence). Plaintiff, however, did not do so.

### C. Relevance

The video evidence was relevant. But an appropriate sanction should also take into account how relevant that evidence might be. As noted above, relevant in the spoliation context means "some showing indicating that the destroyed evidence would have been relevant to the contested issue" such that "a reasonable trier of fact could find that it would support that claim." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554–55 (6th Cir. 2010).

It is undisputed that the camera started recording only once the door was opened. Whether Defendant Powell told Saldana to "open the fucking door" would not have been captured. The disputed testimony, therefore, comes down to whether the arresting Defendants entered with their guns drawn and pointed at Plaintiff's daughters, whether Plaintiff's daughters were crying hysterically, and whether Defendant Powell repeatedly asked "Where's the money? Where's the dope?"

Defendant Holton argues that the video was "critical" to his defense because the arresting Defendants' professionalism is the centerpiece of this suit. (Dkt. #74 Pg. ID 1792.) According to Defendant Holton, the video would have been the only objective evidence of that professionalism—regardless of the fact that the arrest occurred approximately 30 minutes after the camera would have stopped recording. Plaintiff again counters that the video is not relevant because it has nothing to do with the arresting Defendants' alleged excessive use of force 30 minutes later. Plaintiff argues that the arresting Defendants have in no way been prejudiced by the loss of the video.

The reality is somewhere in the middle. While relevant, the video is not dispositive of either Plaintiff's claims or Defendant Holton's defenses. The video would have demonstrated Defendant Holton's professionalism (or lack thereof) in entering Plaintiff's home. If Defendant Holton was professional, it stands to reason that he might have been professional in effectuating Plaintiff's arrest, and a jury could so find. But the correct term is "might." Nothing about the video would have demonstrated that Defendant Holton *must* have been reasonable or professional in arresting Plaintiff. The video, in other words, was not so central to this case as to be the linchpin piece of evidence for either side.

### D. Sanction

A proper spoliation sanction will serve a fairness and a punitive function. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). "Dismissal should rarely be imposed and only when significant prejudice results from the evidence's destruction." *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 386 (6th Cir. 2013).

Defendant Holton argues that dismissal is warranted on these facts, and he cites three cases in which dismissal was upheld as a spoliation sanction. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001); *Capogrosso v. 30 River Court East Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012); *King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 376–78 (4th Cir. 2006). In each of those cases, however, the lost evidence was essential to the defendants' ability to develop a defense. *See Silvestri*, 271 F.3d at 594 (finding that the lost vehicle was the only evidence that could be used to determine whether airbag properly failed to deploy); *Capogrosso*, 482 F. App'x at 682 (upholding dismissal where the plaintiff refused to permit insurance company to inspect allegedly damaged insured property and then destroyed the property before inspection); *King*, 181 F. App'x at 377–78 (upholding dismissal where the defendant's product allegedly caused a fire in the plaintiffs' business but the product was negligently destroyed before the defendant could test it).

Here, the lost video is not essential to Defendant Holton's ability to mount a defense. Defendant Holton seems to acknowledge this in briefing—he does not argue that he is practically unable to defend himself without the video, but rather asserts that the failure to preserve leaves Plaintiff "free to make outrageous allegations." (Dkt. #74 Pg. ID 1788.) Though the video may have supported Defendant Holton's version of events—that he was at all times professional and courteous—he is not precluded from testifying that he was professional and courteous during the arrest itself. Nor are the other arresting Defendants prevented from saying the same. And all would have had this same option had the video been preserved and produced.

Plaintiff's failure to preserve the video, however, has deprived Defendant Holton of evidence that would potentially contradict Saldana's version of the arresting Defendants' entry. Without it, Defendant Holton notes, Plaintiff "is free to make allegations that may highly inflame a jury, like Saldana's testimony that Agent Holton entered her home and pointed his gun at her young daughters from a few feet away for several minutes." (Dkt. #74 Pg. ID 1793.) The testimony about the arresting Defendants' entry, in other words, will amount to a "credibility contest" between the arresting Defendants and Saldana.

The proper remedy, it seems to the court, will firstly preclude Saldana from testifying as to the arresting Defendants' entry. Plaintiff negligently failed to preserve the video of the arresting Defendants' entry, so fairness requires that he not benefit from testimony that the arresting Defendants were unprofessional when they entered his home.

What remains is the punitive function of a spoliation sanction. The court, having found that Plaintiff negligently failed to preserve the video, finds that a jury instruction is also warranted. The court will not, however, impose the irrebuttable presumption suggested by Defendant Holton, which likely would have been appropriate had there been enough evidence that Plaintiff intentionally failed to preserve. *See, e.g.*, *Ross*, 2014 WL 2805094, at *5. Rather, the court will instruct the jury that Plaintiff failed to preserve evidence in preparing for this case, and the jury may ascribe an adverse inference to that failure with whatever weight it deems appropriate.

## IV. CONCLUSION

Plaintiff was negligent in failing to preserve video of the arresting Defendants entering his home, and a spoliation sanction is warranted. Because the video is not dispositive or the only practical evidence to substantiate Defendant Holton's defense, however, dismissal is not warranted. Accordingly,

IT IS ORDERED that Defendant Holton's Motion for Spoliation Sanctions (Dkt. #74) is GRANTED IN PART. It is GRANTED in that the court will impose spoliation sanctions, but DENIED as to the sanctions requested by Defendant Holton.

IT IS FURTHER ORDERED that Deanna Saldana will not be permitted to testify about the arresting Defendants' entry into Plaintiff's house in a way that contradicts the testimony of the arresting Defendants.

IT IS FURTHER ORDERED that the court will instruct the jury that Plaintiff had exclusive access to evidence relating to this case but failed to meet his duty to preserve that evidence, and that the jury may infer from that failure that the evidence would have contradicted Plaintiff's position in this case. The precise language of the jury instruction will be finalized at a later date.

s/Robert H. Cleland            /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 18, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 18, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner            /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\KNP\Civil\16-12430.GUYZIK.spoliation.sanctions.KNP3.docx